IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE MICKEY,              )<br>                               )<br>         Plaintiff,            )<br>                               )     No. 08 C 4658<br>    v.                         )<br>                               )     Magistrate Judge<br> MICHAEL J. ASTRUE,             )     Maria Valdez<br> Commissioner of Social Security, )<br>                               )<br>         Defendant.            )<br>                               ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Lawrence Mickey's claim for Supplemental Security Income Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Mickey's motion for summary judgment [Doc. No. 17] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 28] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

# BACKGROUND

## I. PROCEDURAL HISTORY

Mickey originally applied for Supplemental Security Income Benefits ("SSIB") on December 13, 2004, alleging disability since September 19, 2001.[1] (R. 101.) The application was denied on May 31, 2005 and upon reconsideration on September 8, 2005. (R. 83, 91.) Mickey filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on March 14, 2007. (R. 637.) Mickey personally appeared and testified at the hearing and was represented by counsel. (*Id.*) A medical expert, a vocational expert, and Mickey's case manager also testified at the hearing. (*Id.*)

On March 30, 2007, the ALJ denied Mickey's claim for benefits and found him not disabled under the Social Security Act. (R. 24.) The Social Security Administration Appeals Council denied Mickey's request for review on June 18, 2008, (R. 5), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

[1] Mickey testified that he became disabled from a fall on September 19, 2001, (R. 658), but medical information in the record reflects that the accident occurred in September 2002. There is no explanation in the record, although Mickey admitted that he has trouble with his memory. (*Id.*)

2

## II. FACTUAL BACKGROUND

### A. <u>Background</u>

Mickey was born on October 30, 1960. (R. 61.) At the time of the ALJ hearing, he was forty-six years old. (R. 655.) He is five feet ten inches tall and weighs 245 pounds. (R. 120.) He attended school through the ninth grade. (R. 486.) He was honorably discharged from the military and then worked as a furniture mover. (R. 486.)

Mickey claims disability beginning September 19, 2001 after a four-story fall. (R. 121.) He suffered rib and vertebrae fractures and injuries to his head and spleen. (R. 202, 210-11, 380.) He also suffers from obesity, hypertension, hypercholesterolemia, diabetes mellitus, mood disorder, personality disorder, and polysubstance abuse in remission. (R. 17.)

### B. <u>Testimony and Medical Evidence</u>

#### 1. *Mickey's Testimony*

Mickey testified that before the accidental fall, he was living independently, paying his own rent, and working steadily as a mover. (R. 655, 659.) After the accident, Mickey states that he had to wear a back brace and a walker for nineteen months and had to have three years of physical therapy. (R. 656.) He also testified that he has to walk with a cane and can only stand for fifteen minutes at a time before needing to sit down. (R. 660, 663.) He can also only sit for a few minutes at a time before feeling numbness and pain in his legs. (R. 663.) Mickey testified that his ability to lift and carry any amount of weight has been severely limited since the

accident. (R. 664.) He said that he cannot even lift grocery bags at the supermarket. (*Id.*) Mickey does not drive because he has poor eyesight and cannot pass the eye test for a driver's license. (R. 659.)

Mickey has difficulty remembering dates and appointments. (R. 658, 679-80.) Additionally, because of the medication he takes, he feels lethargic and spends most days sitting and resting. (R. 661, 670.) He often takes thirty to forty minute naps two or three times a day. (R. 676.) Mickey also testified that he has a problem dealing with people. It does not take much to get him angry and he prefers to be alone. (R. 664, 680.) When he was in prison, Mickey requested that he be put in solitary confinement to avoid having to stay with a roommate. (R. 666.) He remained in solitary confinement for fifty-eight out of the sixty-one days he spent in prison. (R. 665.) When asked, Mickey stated that he would have problems being cooperative at work and with supervisors because it is difficult for him to deal with people. (R. 668-69.) He claims to suffer from debilitating panic attacks that make it difficult to participate in group activities. (R. 684.)

Mickey testified that at the time of the hearing, he had not used cocaine for over six months. (R. 667) He stated that he did not feel the need to use drugs anymore because of his participation in a program for homeless men. (*Id.*)

### 2. Case Worker Testimony

Paul Luikart, Mickey's case worker, testified that he had worked with Mickey for approximately five months. (R. 648.) In that time, he had the opportunity to observe the state of Mickey's physical and mental health.

4

Luikart testified that it is very difficult for Mickey to climb stairs. (R. 649.) After such physical exertion, Mickey is out of breath, experiences chest pains, and has pain in his legs and back. (R. 649-50.) Luikart also observed that Mickey often appears anxious and depressed and remains isolated and has very few friends. (R. 650, 652.) Luikart noted that Mickey takes medications for high blood pressure and diabetes and has taken medication for mental health issues in the past. (R. 651.) Luikart also testified that Mickey, to the best of his knowledge, has never lived independently and has frequently been homeless. (R. 654.) Mickey has only found housing through emergency overnight shelters or through agencies that assist homeless men and women with housing. (*Id.*)

### 3. *Medical Expert Testimony*

Dr. Michael Carney testified as the medical expert at the hearing. (R. 688.) Dr. Carney testified that Mickey met the listing requirements for two psychological disorders: affective disorder (12.04) and personality disorder (12.08). (R. 689.) Dr. Carney stated that if Mickey had the resources he would be able to take care of himself. (R. 689-90.) Mickey can ride public transportation and could probably live independently. (R. 690, 693.) The fact that Mickey had once lost a $43,000 workers' compensation settlement in an investment scheme did not change Dr. Carney's opinion that Mickey would be able to function adequately on his own. (R. 695.)

Dr. Carney acknowledged that Mickey has difficulty interacting with others. He testified that Mickey becomes easily irritated and can be difficult and oppositional at times. (*Id.*) Dr. Carney could foresee him having problems with

5

supervisors. (*Id.*) Dr. Carney noted Mickey's past history of aggression and that Mickey was discharged from the armed services for fighting with his commanding officer or training officer. (R. 689.)

Next, Dr. Carney evaluated Mickey's ability to concentrate on a task. He testified that Mickey could do calculations and that his short term memory, recall, and attention span were fine. (R. 691.) Over an eight hour work day, Dr. Carney guessed that Mickey would be able to concentrate on a job under customary work pressures, even in close proximity to other workers. (R. 691-93, 699.)

Finally, Dr. Carney testified about the effect of cocaine use on Mickey's mental state. Dr. Carney testified that cocaine or crack use would exacerbate depression. (R. 697.) He stated that cocaine in general did not help mood or functioning. (*Id.*)

### 4. *Vocational Expert's Testimony*

Mr. Breen testified as the vocational expert. (R. 700.) He testified that Mickey's past work as a mover gave him no transferable skills and that he had no significant vocational advantage over an unskilled worker. (R. 701.) Mr. Breen testified that jobs exist for forty-six year old individuals who need work that is simple with little individual interaction with only occasional climbing, bending and squatting. There are approximately 14,000 assembly jobs, 40,000 hand packer jobs, and 6,000 mail clerk jobs. (R. 702.) Mr. Breen explained that the availability of these jobs would change if an individual needed sedentary work, had a hard time remaining on task and needed frequent, unscheduled breaks and work absences. He

6

testified that employers tolerate ten to twelve absences a year. (R. 703.) If a person needs any more than that, that person is unemployable. (*Id.*) Furthermore, employers will not accommodate an employee's need to lay down for forty-five minutes a day and will not tolerate an employee going off task for more than ten minutes each hour. (*Id.*) Finally, Mr. Breen testified that supervisors have no tolerance for being told off in the workplace. (*Id.*)

### C. <u>ALJ Decision</u>

The ALJ found that Mickey had not engaged in substantial gainful employment since December 13, 2004. (R. 16.) The ALJ also found that Mickey had severe impairments from non-insulin dependent diabetes mellitus, hypertension, hypercholesterolemia, obesity, status post September 23, 2002 comminuted L1 vertebral end-plate fracture, L2-L5 vertebral end-plate fractures with anterior compression, multiple rib fractures, resolving spleen hematoma, December 2002 ruptured appendix, mood disorder, personality disorder, and polysubstance abuse in remission. However, the ALJ found that even with the substance use, Mickey did not have an impairment or combination of impairments that met or medically equaled any listing of impairments. (R. 17.)

The ALJ next found that Mickey had the residual functional capacity to perform light work, subject to poor frustration tolerance and impulse control, signifying that, under cocaine and alcohol duress, Mickey would need a structured work environment with no specific work pace and would have to take frequent, unscheduled breaks. (R. 18.) The ALJ concluded that Mickey had the following

7

physical residual functional capacity for light work with the following additional limitations: need for routine simple work, learnable on short demonstration and involving little novelty; only superficial interactions with co-workers and the public; no extended written or oral communications; and only the occasional need for bending and squatting. (R. 21.)

The ALJ found that Mickey could not perform any past relevant work. (R. 19.) Using the Medical-Vocational guidelines together with the testimony of the vocational expert and Mickey's impairments, including the substance use disorder, the ALJ concluded that there were no jobs existing in significant numbers in the national economy that Mickey could perform. (R. 20.) Therefore, Mickey was disabled. (*Id.*) However, because the ALJ determined that Mickey was not disabled independent of substance use, the ALJ concluded that his substance use disorder is a contributing factor material to the determination of disability. (R. 14.) Accordingly, the ALJ ruled that Mickey is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is

8

disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

9

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Mickey argues that the ALJ decision was in error because: (1) the ALJ found that Mickey's mental impairments were secondary to a substance use disorder without relying on acceptable medical evidence; and (2) the ALJ's residual functional capacity assessment failed to include all of Mikey's mental and physical limitations.[2]

### A.     Mental Impairments/Substance Use

Mickey first argues that the ALJ improperly evaluated the limitations caused by his psychological problems. Mickey claims that the ALJ wrongly concluded that his mental impairments were substance-induced, based on evidence of prior cocaine use. The ALJ found that one of Mickey's impairments was "substance use disorder (also referred to in the decision as "polysubstance abuse in remission") and that Mickey was only disabled when that impairment was included in his RFC.

A person is not considered disabled "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). If a claimant is found to be disabled, and there is medical evidence of drug addiction or alcoholism, the Commissioner must determine whether the drug addiction or

---

[2] Mickey also argues that the ALJ failed to ask the VE whether his testimony about available jobs in the economy was consistent with the Dictionary of Occupational Titles ("DOT"). Because the Court is remanding the case on another basis, it need not determine whether the error was harmless, as the Commissioner urges. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625-26 (7th Cir. 2008). On remand, the ALJ is reminded that he "has an affirmative duty to ask a vocational expert if the evidence that the expert has provided about job limitations conflicts with the job requirements listed in the DOT, and if the evidence appears to conflict, the ALJ must ask the vocational expert to explain the conflict." *Id.* at 625.

alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. § 416.935(a). The "key factor" is whether the claimant would still be found disabled if he stopped using drugs, which is determined by identifying the limitations that would remain if the claimant stopped using drugs and then deciding whether those remaining limitations would be disabling. *See* 20 C.F.R. § 416.935(b)(1)-(2). If the remaining limitations would not be disabling, then drug addiction is a contributing factor material to the determination of disability; if the remaining limitations are disabling, then the claimant is disabled independent of the drug addiction, which is not a contributing factor material to the determination of disability. *See* 20 C.F.R. § 416.935(b)(2)(i)-(ii).

Mickey criticizes the ALJ's finding related to the effects of his substance use on several fronts. First, the ALJ's finding of a "substance use disorder" was conclusory and not supported by the record. He improperly came to the conclusion based solely on Mickey's self-reported past cocaine use, which was included in a note from a social worker. Mickey claims that the evidence in the record does not support either the finding that he used up to $300 worth of cocaine a day until December 2004, or that the cocaine use superseded all of his other physical and mental impairments. Second, the diagnosis of cocaine abuse that is included in the record came from a social worker, not an acceptable medical source to establish an impairment. *See* 20 C.F.R. § 416.913(a) (listing acceptable medical sources including licensed physicians or psychologists, not including social workers); *see also* 20

C.F.R. § 416.913(d) (stating that other sources can be used to show the severity of an impairment).

The Court agrees that the ALJ did not adequately explore the extent and effects of Mickey's substance use and that his conclusions are not clearly supported in the decision. *See Smith v. Massanari*, No. 00 C 7652, 2002 WL 480955, at *8 (N.D. Ill. Mar. 25, 2002) (explaining that an ALJ must articulate his reasons for finding that drug use is material to a disability finding). The ALJ's conclusion was based in part upon a diagnosis from an unacceptable medical source, which itself was based solely upon self-reported prior use during a period of particular stress, after his wife's death. In addition, the ALJ notes that many of Mickey's prior incidents of severe mental impairment, *e.g.,* suicidal ideation, included contemporaneous drug use and implies that they were substance-induced. The ALJ, however, did not draw a logical bridge to his conclusion that, although Mickey suffered from some undisputed mental impairments (*i.e.*, affective disorder and personality disorder), those impairments were not disabling in the absence of drug use. The medical expert's testimony that his mental impairments would be expected to worsen during periods of drug use is not sufficient to support the ALJ's conclusion. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("[T]he fact that substance abuse aggravated [the claimant's] mental illness does not prove that the mental illness itself is not disabling."). The matter should therefore be remanded to the Commissioner for a better analysis of Mickey's mental

impairments, any substance disorders, and whether he is disabled in the absence of substance abuse.

## B. Incomplete RFC Analysis

Mickey next complains that the ALJ failed to incorporate or adequately account for several impairments into his RFC, including various mental impairments, such as depression, impulse control disorder, borderline personality disorder, and difficulty with memory and concentration; and physical complaints such as chest pain, shortness of breath, and dizziness with exertion, and headaches. The Court agrees with the Commissioner that Mickey's physical complaints are either not supported by objective medical evidence in the record or are included in the ALJ's RFC for light work.[3] Mickey's arguments related to his mental impairments are discussed above. To the extent that his mental impairments may have been minimized in the RFC, it was the result of the ALJ's conclusion that they were substance-induced. These impairments should thus be analyzed by the Commissioner on remand.

---

[3] In addition, many of Mickey's physical complaints are self-reported symptoms, and the ALJ did not find his claims as to the nature and severity of the symptoms to be credible. Mickey did not challenge the ALJ's credibility finding.

## CONCLUSION

For the foregoing reasons, Plaintiff Lawrence Mickey's motion for summary judgment [Doc. No. 17] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 28] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**   **ENTERED:**

**DATE:   January 9, 2012**   _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**